**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 16, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KELLY D. TIGERT,

      Petitioner-Appellant,

v.

HASKELL HIGGINS, Warden,

      Respondent-Appellee.

No. 07-7033
(D.C. No. 06-CV-72-JHP)
(E.D. Okla.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **HENRY**, Chief Judge, **TYMKOVICH**, and **HOLMES**, Circuit Judges.

      Petitioner-Appellant Kelly Tigert, an Oklahoma state prisoner appearing

pro se, seeks a certificate of appealability ("COA") in order to challenge the

district court's dismissal of his habeas petition as time-barred. We have

jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). After reviewing Mr. Tigert's

---

      [*] After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See FED. R. APP. P. 34(a)(2); 10th CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with FED. R. APP. P. 32.1 and 10th CIR. R. 32.1.

filings liberally,[1] we deny his request for a COA and dismiss his appeal because reasonable jurists would not find it debatable whether Mr. Tigert has stated a valid claim of the denial of a constitutional right.

## I. BACKGROUND

Mr. Tigert is serving a twenty-year sentence for manufacturing a controlled dangerous substance. On October 4, 2004, Mr. Tigert was a prisoner at Howard McLeod Correctional Center ("HMCC") assigned to a work crew. Complaining of back pain, Mr. Tigert refused an order from a correctional officer to work. He was handcuffed and placed in a special housing unit, and a correctional officer reported the incident.

Mr. Tigert was charged with "Disobedience to Orders" and given notice of the charge. R., Vol. I, Doc 10 (Resp.'s Motion to Dismiss Petition), Ex. 2, at 1 (Offense Report). A prison official conducted an investigation and produced a report on October 10, 2004. Mr. Tigert gave a statement to the investigator. He acknowledged that a correctional officer ordered him to go to work, but stated that he responded by turning around and informing the officer that "he had pulled some muscles in his back and wanted to see a Doctor." *Id.* at 2 (Investigator's Report). At that point, Mr. Tigert said, the officer handcuffed him.

---

[1]    Because Mr. Tigert is proceeding pro se, we review his pleadings and filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 815 (10th Cir. 2007).

The investigator gave Mr. Tigert an opportunity to furnish "documentary evidence" pertinent to the charge; however, Mr. Tigert gave the investigator no documents. *Id.* On the other hand, the investigator gave Mr. Tigert documents related to the charge including statements from three correctional officers and an inmate who all claimed to have witnessed the incident. Mr. Tigert acknowledged in writing on October 10, 2004 that he received the statements.

The three correctional officers reported that Mr. Tigert refused to go to work. In particular, one officer noted that when Mr. Tigert was told that he either could "go to work or go to jail," Mr Tigert "turn[ed] around and put his hands behind his back." *Id.* at 6 (Incident/Staff Report). The inmate witness's statement consisted of one sentence. He said that he witnessed Mr. Tigert telling the officers that "[h]is [b]ack hurt." *Id.* at 4 (Witness Discretionary Action Record).

The investigator notified Mr. Tigert in writing on October 10, 2004 that the hearing was scheduled for two days later, October 12. The report of the Disciplinary Hearing Officer ("DHO") indicates that at the hearing Mr. Tigert pleaded "Not Guilty" to the charge.[2] *Id.* at 8 (Disciplinary Hearing Report). The

---

[2]     Ultimately, as noted *infra*, the DHO found Mr. Tigert guilty of the charged offense. In his signed administrative-appeal paperwork, Mr. Tigert checked the box asserting as one ground for appeal that he "was not . . . permitted to attend the hearing." R., Vol. I, Doc. 10, Ex. 3 at 2 (Offender's Misconduct

(continued...)

DHO found Mr. Tigert guilty of the charge. As evidentiary support for his finding, the DHO pointed to the three witness statements of the correctional officers which the DHO noted were consistent with the description in the offense report. The DHO's punishment included revocation of certain earned good time credits of Mr. Tigert. The DHO noted that the punishment was necessary "[t]o deter this type of future behavior." *Id.* On October 13, 2004, the Facility Head's Designee affirmed the DHO's finding and Mr. Tigert received a copy of the disposition.

Mr. Tigert lodged his appeal and has argued that he did so in a timely fashion, that is, within thirty days. Mr. Tigert notes that he obtained on his copy of the appeal form an October 29, 2004 date stamp to confirm when he placed the

[2](...continued)
Appeal Form, signed Oct. 28, 2004). The district court, however, found to the contrary. *Id.*, Doc. 13, at 1 (Dist. Ct. Order, dated Mar. 30, 2007) ("Petitioner was present at the disciplinary hearing that was held on October 12, 2004."). Moreover, the record belies Mr. Tigert's assertion. In particular, the structure of the generic report form completed by the DHO—which has a field for entering the time and place of the hearing and a *subsequent* field for the prisoner to enter his or her plea to the charge—strongly suggests that Mr. Tigert entered his plea at the hearing. Furthermore, nowhere in the DHO's report is there mention of Mr. Tigert's absence—which presumably would have been a noteworthy event. Indeed, on appeal, Mr. Tigert describes particular investigatory requests that he made of the DHO *at the hearing*. Aplt. Br. at 10 ("A simple check by this same hearing officer with medical staff *as requested by Appellant . . . .*" (emphasis added)). In any event, Mr. Tigert does not raise before us any contention of error based upon his absence at the disciplinary hearing. Accordingly, we are comfortable proceeding on the view that Mr. Tigert was present at the hearing.

form in the prison mail system.  However, the Warden received Mr. Tigert's

appeal on January 6, 2005, and returned it unanswered since it was received more

than thirty days after Mr. Tigert received the decision of the Facility Head's

Designee.  Mr. Tigert resubmitted his appeal to both the Warden and the

Department of Corrections Director ("Director").

Relying on the Warden's return of Mr. Tigert's appeal unanswered as "out

of time," the Director-Designee likewise returned the appeal on February 7, 2005.

*Id.*, Ex. 3 (Memorandum from Director-Designee to Mr. Tigert, dated Feb. 7,

2005), at 1.[3]  Specifically, in a form memorandum addressed to Mr. Tigert, the

Director-Designee found that Mr. Tigert's appeal was untimely and he had

"forfeited the opportunity to continue" it.  *Id.*  In the same memorandum,

however, the Director-Designee also stated that Mr. Tigert's appeal was being

returned because it was "submitted with too many attachments," and that Mr.

Tigert "w[ould] be afforded one additional opportunity to resubmit his appeal

within fifteen days."  *Id.*  Notably, although the form memorandum permitted the

Director-Designee to declare that "the decision of the director or designee is

final," the Director-Designee did not select that decisional option.  *Id.*  Mr. Tigert

---

[3]     The Director-Designee recorded the decision on a form memorandum
containing numbered paragraphs specifying certain decisional outcomes.  The
paragraphs are immediately preceded by a blank line.  By placing a mark on a
line, a Director-Designee may signal his or her adoption of the noted decisional
outcome (e.g., return of an appeal unanswered for being "out of time").

apparently resubmitted his appeal on or about March 7, 2005. Four days later, on March 11, the Director-Designee denied the resubmitted appeal, again citing Mr. Tigert's forfeiture of his appeal. This time the Director-Designee did pronounce its decision "final." *Id.*, Ex. 4 (Memorandum from Director-Designee to Mr. Tigert, dated Mar. 11, 2005), at 1.

On February 21, 2006, Mr. Tigert filed a habeas petition, pursuant to 28 U.S.C. § 2241, challenging the discipline he received. The state respondent urged the court to dismiss Mr. Tigert's action claiming that it was time-barred. In addressing the state respondent's motion, the district court observed that Mr. Tigert did not timely appeal the disciplinary action since the Warden did not receive his appeal within thirty days. Adopting what it considered the "most generous interpretation," however, the district court determined that the 28 U.S.C. § 2244(d)(1)(D) limitation period began to run when the Director-Designee first "advised him that his appeal was being returned" because he had forfeited his appeal—that is, on February 7, 2005. R., Vol. I, Doc. 13, at 3 (Dist. Ct. Order, dated Mar. 30, 2007). The court held, therefore, that Mr. Tigert's February 21, 2006 habeas filing was out of time. *Id.*

Mr. Tigert timely filed a notice of appeal challenging the district court's dismissal of his petition.

-6-

## II. DISCUSSION

Issuance of a COA is a jurisdictional prerequisite to appealing the dismissal of a § 2241 petition. *See* 28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added); *see Magar v. Parker*, 490 F.3d 816, 818 (10th Cir. 2007).

More specifically, a petitioner must make "a substantial showing of the denial of a constitutional right." *Slack*, 529 U.S. at 484. To make the necessary substantial showing, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks omitted).

## A. Procedural Grounds

Invoking 28 U.S.C. § 2244(d)(1)(D),[4] Mr. Tigert contends that, because the Director-Designee's February 7, 2005 correspondence expressly provided that he could resubmit his appeal within fifteen days, the district court erroneously determined that his habeas petition was time-barred one year after that February 7 correspondence. Mr. Tigert contends that "the Designees [sic] decision did not become final until February 22, 2005, giving the Appellant until February 22, 2006 to file his habeas." Aplt. Br. at 2. Consequently, Mr. Tigert contends that his habeas petition (filed on February 21, 2006) was timely.

Because we conclude that Mr. Tigert has failed to make a substantial showing of the denial of a constitutional right, we need not decide whether

---

[4]   In pertinent part, the statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> . . . .
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through exercise of due diligence.

28 U.S.C. § 2244(d)(1)(D). In his appellate brief, through apparent inadvertence, Mr. Tigert refers to "28 U.S.C. § 2241(d)(1)(D)." *See* Aplt. Br. at 1. His brief is of course interpreted liberally and we ignore this mistake.

reasonable jurists would find the district court's resolution of the statute of limitations issue to be debatable. *See United States v. Springfield*, 337 F.3d 1175, 1178-79 (10th Cir. 2003) (noting that "we need not examine the district court's procedural ruling" because the prisoner "has not shown" that reasonable jurists would find debatable whether the motion states a valid denial of a constitutional right); *see also Slack*, 529 U.S. at 485 (noting that "a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments").

## B. Constitutional Grounds

We read Mr. Tigert's petition to allege that he was denied due process when his earned good time credits were revoked on the basis of defective procedures and insufficient evidence. In addition, Mr. Tigert claims that officers violated his Eighth Amendment rights when they ordered him to go to work, after he informed them that he had injured his back. We address each claim in turn.

### 1. Due Process

"It is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996) (internal quotation marks omitted) (quoting *Taylor v. Wallace*, 931 F.2d 698, 700 (10th Cir.1991)). In *Wolff v. McDonnell*, 418 U.S.

539 (1974), the Supreme Court noted that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556. In *Wilson v. Jones*, 430 F.3d 1113 (10th Cir. 2005), *cert. denied*, 127 S. Ct. 158 (2006), we outlined what was required to pass due process muster under *Wolff* and its progeny:

> As a general rule, before officials may take actions that affect these protected liberty interests, they must afford a prisoner (a) advance written notice of the charges; (b) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (c) a written statement by the factfinder of the evidence relied upon on [sic] and the reasons for the disciplinary action. In addition, the decision must be supported by some evidence.

*Id.* at 1117 (citation omitted).

In discussing what would constitute adequate advanced notice, the Court in *Wolff* noted that "[a]t least a brief period of time[,] . . . no less than 24 hours, should be allowed to the inmate to prepare for the appearance before" the prison disciplinary body. 418 U.S. at 564. Further, "[a]scertaining whether this [some-evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985) (emphasis

added).  "The decision can be upheld even if the evidence supporting the decision is 'meager.'"  *Mitchell*, 80 F.3d at 1445 (quoting *Hill*, 472 U.S. at 457).

We conclude that Mr. Tigert received the requisite due process.  Although not framed in terms of the *Wolff* standards, Mr. Tigert's arguments appear to relate to his opportunity to present evidence in his own defense and the sufficiency of the evidence to support the DHO's guilty finding.  In the interest of completeness, however, we note that Mr. Tigert received notice of the charge against him two days before the hearing, on October 10, 2004, along with copies of pertinent witness statements.  Furthermore, Mr. Tigert entered a plea of "Not Guilty" and was apparently present throughout the hearing.  Lastly, the DHO clearly set out the evidentiary basis for its guilty finding—noting the three witness statements from the correctional officers that were consistent with the offense report.  And the DHO explicitly justified Mr. Tigert's punishment under deterrence principles.  Therefore, even if contested by Mr. Tigert, we would conclude with little difficulty that the disciplinary proceedings satisfied the first and third *Wolff* factors (i.e., the "advanced notice" and "written statement" factors).

### a.  Opportunity to Present Evidence

Regarding Mr. Tigert's opportunity to present evidence, even construed liberally, his contention is a narrow one related to an alleged failure of the DHO

to secure and review evidence that Mr. Tigert deemed favorable to his defense. We have recognized that under certain limited circumstances such a failure may violate a prisoner's due process rights. *See Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 813-14 (10th Cir. 2007).

Mr. Tigert's argument stems from his claim that the correctional staff's work demands were inconsistent with his documented, physician-prescribed medical restrictions. Mr. Tigert asserts that when he was moved to HMCC from another Oklahoma prison, due to an "accidental omission" by HMCC's nursing staff, two key medical restrictions were not transferred from his former prison's paperwork to his HMCC paperwork. Aplt. Br. at 7. Specifically, Mr. Tigert says that his HMCC paperwork should have reflected the following restrictions: (1) "No walking on wet or uneven surfaces" and (2) "Consult medical before taking disciplinary action." *Id.* at 5.

Mr. Tigert acknowledges that he did not notice the omission "at the time" of his transfer and did not seek to rectify the error until "*after* the misconduct [report] was issued." *Id.* (emphasis added). Specifically, on October 11, 2004, one day before the disciplinary hearing, Mr. Tigert apparently was successful in getting the HMCC's nursing staff to revise his medical paperwork to reflect the first restriction concerning walking on wet or uneven surfaces. *See* Aplt. Br., Ex. E (Memorandum from Health Services to Warden, dated Oct. 11, 2004). Mr.

Tigert says that he informed the DHO at the hearing about the "clerical error" concerning his medical-restriction paperwork and requested that the DHO contact HMCC's medical staff to confirm the error, but the DHO wrongfully elected instead to "accept" the statements of the three correctional officers. *Id.* at 8, 10. Therefore, interpreted liberally, Mr. Tigert's contention is that the DHO's failure to gather and review evidence concerning the alleged "clerical" error in his medical-restriction paperwork violated his due process rights. We disagree.

In *Howard*, the prisoner was charged with an assault on another inmate and claimed that video-tape records from a camera surveying the scene of the assault "would bolster his argument that he acted in self-defense." 487 F.3d at 813. We commented that "prison officials are required to consider a request for documentary evidence on an individualized basis," evaluating whether the request would jeopardize the institution's safety and correctional goals. *Id.* (citing *Wolff*, 418 U.S. at 566). Focusing on the circumstances *sub judice*, our study of the record "provide[d] strong inferential support" for the prisoner's claim that he "requested production of the tape at the DHO hearing." *Id.* at 814 n.3. And we acknowledged that "critical facts" related to the prisoner's defense "may have been recorded on the videotape." *Id.* at 814-15. Considering these circumstances, we concluded that the "DHO's unjustified refusal to produce and review [the video-tape records] deprived [the prisoner] of the process due him." *Id.* at 814.

The facts of this case, however, are far afield from those in *Howard* and, consequently, *Howard* does not suggest that we should reach a similar conclusion here. We cannot glean from the record a "strong" inference that Mr. Tigert actually asked the DHO to review specific evidence relating to the purported clerical error involving his medical-restriction paperwork. Indeed, nothing in the record even points in that direction. In particular, the DHO's decision makes no reference to a request by Mr. Tigert that the DHO review his medical-restriction paperwork. Thus, in contrast to *Howard*, we have nothing but Mr. Tigert's bald averments to support his claim that he made any kind of request for review of evidence related to the alleged clerical error.

Moreover, unlike the situation in *Howard* where the prisoner made a request for the production of specific, readily identifiable evidence, Mr. Tigert only claims to have requested the DHO to "contact medical to verify" his "well documented medical history" involving "lower back pain problems." *Id.* at 8. In particular, Mr. Tigert does not claim to have requested the production of the revised medical-restriction form dated October 11, 2004, which showed the restriction against walking on wet or uneven surfaces. Nor does he claim to have asked the DHO to get and consider a statement from the HMCC staff member that allegedly made the clerical error. Therefore, we cannot say that the DHO would have acted unjustifiably in concluding that any such vague request by Mr. Tigert

-14-

was not sufficient to trigger an obligation to make investigative inquiries with HMCC's medical staff for allegedly exculpatory information.

Furthermore, unlike the DHO in *Howard*, the DHO here would not have been unjustified in concluding that the medical-restriction evidence would not have provided "critical facts" that would have tended to exculpate Mr. Tigert of the charge of "Disobedience to Orders."  Mr. Tigert never informed the correctional officer who issued the go-to-work order of the purported discrepancy in his medical-restriction paperwork.  Furthermore, the record strongly indicates that Mr. Tigert did not offer the two medical restrictions at issue as a justification for his failure to follow the officer's work order.[5]  As underscored in Mr. Tigert's statement and the inmate-witness's statement to the prison investigator, in declining to comply with the work order, Mr. Tigert simply noted that his back hurt.  In other words, without calling attention to his allegedly correct medical

---

[5]     In his habeas petition, Mr. Tigert asserts that he "informed" the correctional officer who gave the go-to-work order "about my restriction."  R., Vol. I, at Doc. 1, at 6 Attach. at 1 (Pet. Under 28 U.S.C. § 2241 for Writ of Habeas Corpus, dated Feb. 21, 2006).  Even if we assume that the import of this vague statement is that Mr. Tigert informed the officer of the two restrictions that purportedly barred his work, the statement runs counter to the predominant thrust of the record evidence.  In fact, close to the time of the incident when Mr. Tigert's memory presumably was clearer, he apparently did not make that assertion to the prison investigator, and Mr. Tigert does not repeat that assertion on appeal.  Furthermore, the statements of the other witnesses, including the inmate witness, do not indicate that Mr. Tigert referred to medical restrictions upon receiving the go-to-work order.

restrictions or the related paperwork discrepancies, Mr. Tigert simply disobeyed the work order.

Therefore, in deciding whether Mr. Tigert was guilty of the offense of Disobedience to Orders, the DHO would not have been unjustified in concluding that information bearing on Mr. Tigert's allegedly correct medical restrictions or the related paperwork discrepancies—information undisclosed to the prison staff issuing the work order—was not critical (and perhaps not even relevant) to the assessment of Mr. Tigert's guilt of the offense of Disobedience to Orders.  In particular, the DHO could have permissibly reasoned that even if Mr. Tigert correctly perceived the staff's work order to be unjust or unfair in light of his medical restrictions, Mr. Tigert simply was not free to disregard the order.  *Cf. United States v. Price*, 444 F.2d 248, 250 (10th Cir. 1971) (where prisoner did not deny physically resisting a correctional officer's order but "insist[ed] that the order was unjust and thus unlawful," we declared prisoner's defense to be "patently untenable," noting that "[j]ust or unjust" the order was made and "the remedy to test justification of an order . . . lies within the administrative processes at the institution and not in the prisoner's subjective choice to physically resist").  *Accord Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1242-43 (7th Cir. 1997) (referencing the "time-honored principle of industrial relations that—with few exceptions—an employee must 'obey now and grieve

-16-

later,'" and concluding that employer could justly discipline employee by terminating him for refusing order that employee deemed unjust, as employee wrongfully "acted as law unto himself, deciding which orders to obey and which to refuse"). Especially in the "highly charged atmosphere" of prisons, *Hill*, 472 U.S. at 456, the DHO could have reasonably concluded that it would be inappropriate to allow inmates to decide unilaterally to disobey orders that they perceive (even correctly) to be unjust or illegitimate, because doing so could have serious adverse consequences for institutional efforts to maintain order and avoid disturbances. *Cf. Wolff*, 418 U.S. at 567 ("The operation of a correctional institution is at best an extraordinarily difficult undertaking.").

### b. Sufficiency of the Evidence

Insofar as Mr. Tigert challenges the sufficiency of the evidence underlying the DHO's finding of guilt, his position is untenable. Under the deferential "some evidence" standard of *Hill*, the DHO's finding rested on an ample evidentiary foundation. The DHO expressly noted that he relied on the three correctional staff statements which in material respects were consistent with the initial misconduct report, and which noted that Mr. Tigert refused to follow the go-to-work order. There was no evidence to the contrary. Notwithstanding Mr. Tigert's contrary appellate assertion, the inmate witness did not say that Mr. Tigert "never refused to work." Aplt. Br. at 9. The inmate merely stated that Mr.

-17-

Tigert said that "[h]is [b]ack [h]urt." *Id.*, Ex F, at 1. Under *Hill* and its progeny, the quantum of evidence supporting the DHO's guilty finding was certainly more than "meager." And, indeed, we have concluded that the "some evidence" standard was satisfied when the evidentiary showing was significantly less substantial. *See, e.g.*, *Longstreth v. Franklin*, 240 F. App'x 264, 267 (10th Cir. 2007); *Ruelas v. Zuercher*, 240 F. App'x 796, 797 (10th Cir. 2007).

Mr. Tigert questions the reliability of two of the three witness statements. In particular, Mr. Tigert notes that one statement bears a date three days before the incident (i.e., October 1, 2004); consequently, Mr. Tigert contends that person was not an "actual witness." *Id.* at 9. As to the other statement, Mr. Tigert argues that because the correctional officer in question was out of earshot of the incident and his vision was obstructed by a tool trailer, he could not have witnessed the incident, and that it was indeed "ironic" that the witness supplied such "imaginary detail." *Id.* However, "it is not our job" under the "some evidence" standard to undertake an independent assessment of the credibility of the witnesses or to weigh the evidence, and we decline to do so. *Mitchell*, 80 F.3d at 1445 (declining "to address the validity of th[e] evidence" underlying disciplinary committee's findings). We conclude that the DHO's finding of guilt was based on sufficient evidence to satisfy due process standards.

## 2. Eighth Amendment

Mr. Tigert claims that his work assignment was inconsistent with his medical restrictions, and that correctional staff violated his Eighth Amendment rights by directing him to work despite his inability to do so. Prison officials violate the Eighth Amendment when they act with deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). A claim of deliberate indifference has "both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The medical need may be considered sufficiently serious, thus satisfying the objective component, "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).

To satisfy the subjective component, the prisoner must demonstrate that the prison official "knew of and disregarded an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a stringent standard of fault, requiring proof that [an] actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997) (internal quotation marks omitted). Mere negligence or inadvertence is insufficient to support a violation of the

Eighth Amendment. *Estelle*, 429 U.S. at 106.

Even if Mr. Tigert were able to establish the objective component, his Eighth Amendment claim would fail because he has not established the subjective component. Mr. Tigert contends that the correctional officers who supervised his work crew and were directly involved in issuing the go-to-work order "were well aware of Appellants [sic] medical condition due to the fact that they were presented with Appellants [sic] list of restrictions . . . *immediately* upon Appellants [sic] arrival at H.M.C.C," Aplt. Br. at 8 (emphasis added), and were required to return him daily to the facility from off-site work assignments to receive his medication.

However, as detailed *supra* (Sec. II.B.1.a), Mr. Tigert acknowledges that *before* the correctional officer issued the go-to-work order that led to his discipline, Mr. Tigert's medical paperwork did not reflect the key medical restrictions that Mr. Tigert contends would have prohibited the work order. Accordingly, at the time that he issued the go-to-work order, the correctional officer could not have known that Mr. Tigert was medically unable to do the work—or, more to the point, that he would be disregarding an excessive risk to Mr. Tigert's health or safety by ordering Mr. Tigert to work.[6]

_____

[6] Indeed, as Mr. Tigert concedes, the alleged failure to properly record his pertinent medical restrictions in his HMCC paperwork was (at most) an act of
(continued...)

Nor is there any evidence that the officer would have been aware of that health or safety information from another source. The fact that the officers had to return Mr. Tigert to the facility to receive his medication would have been patently inadequate to alert the officers to serious risks to Mr. Tigert's health and safety; even inmates with comparatively minor ailments who had medication needs almost certainly would have been entitled to similar treatment. Furthermore, Mr. Tigert apparently did not draw the officer's attention to his medical restrictions that purportedly would have barred the go-to-work order; by his own admission, Mr. Tigert merely complained of back pain. *See* R., Vol. I, Doc. 10, Ex. 2, at 1 (prison investigator reporting that Mr. Tigert told the officer "he had pulled some muscles in his back and wanted to see the Doctor"). From such a general complaint, we conclude that the officer could not reasonably have been expected to divine that directing Mr. Tigert to work would disregard an excessive risk to Mr. Tigert's health or safety. Accordingly, having determined that Mr. Tigert has failed to establish the second component of the relevant

---

[6](...continued)
negligence. *See* Aplt. Br. at 5, 7 (describing as "an honest mistake" and an "accidental omission," the failure to transfer to his HMCC paperwork the relevant medical restrictions). In other words, it could not be asserted that there was an intentional effort by the HMCC medical staff to keep the correctional officers supervising Mr. Tigert in the dark concerning his medical needs. Because the medical staff was at most negligent, Mr. Tigert wisely did not attempt to mount an Eighth Amendment challenge based upon their actions.

standard, we reject Mr. Tigert's Eighth Amendment claim. *See Hoover v. Keating*, 59 F. App'x 288, 292 (10th Cir. 2003) (in rejecting claim that prison violated inmate's Eighth Amendment rights by insisting that he accept housing assignment supposedly contrary to his health condition, noting that inmate had failed to show prison officials "possessed the requisite state of mind of deliberate indifference" because the facts did not indicate that officials "were aware of [the inmate's] health condition until he brought it to their attention well after the housing assignments were imposed").

## III. CONCLUSION

Upon review of the appellate filings and the entire record, we conclude that Mr. Tigert has not made the requisite showing of the denial of a constitutional right. Accordingly, we **DENY** Mr. Tigert's request for a COA, and we **DISMISS** this appeal.

Entered for the Court

Jerome A. Holmes
Circuit Judge