**F I L E D**

**PUBLISH**

**May 23, 2007**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CLINTON HOWARD,

      Petitioner-Appellant,

v.

UNITED STATES BUREAU OF
PRISONS,

      Respondent-Appellee.

No. 06-3315

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 04-CV-3115-RDR)**

---

Submitted on the briefs:[*]

Clinton Howard, pro se.

Eric F. Melgren, United States Attorney, and D. Brad Bailey, Assistant United States Attorney, District of Kansas, for Respondent-Appellee.

---

Before **HARTZ, EBEL,** and **TYMKOVICH**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

[*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Petitioner Clinton Howard, a federal inmate proceeding *pro se*, appeals the dismissal of his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241.[1]  He argues that, during two disciplinary proceedings against him for assaulting another prisoner and possessing drug paraphernalia, officials of the federal penitentiary in Florence, Colorado, violated his due process rights. Because Mr. Howard was denied the opportunity to present potentially exculpatory evidence at one of his hearings, we AFFIRM in part and VACATE and REMAND in part.

## I.  Facts

On December 9, 2001, Clinton Howard, an inmate at the United States Penitentiary in Florence, Colorado ("USP - Florence"), under the supervision of the United States Bureau of Prisons ("the Bureau"), was involved in a fight with another inmate ("Inmate X").  According to the observations of Officers Hash and Sams, who witnessed at least the denouement of the altercation, Mr. Howard was chasing "Inmate X" in the prison yard and threw a homemade weapon at him but missed.  "Inmate X" then picked up the weapon and struck Mr. Howard with it.

---

[1]Because Mr. Howard is a federal prisoner proceeding under 28 U.S.C. § 2241, we note that his appeal is not governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), and thus no certificate of appealability is required.  McIntosh v. U.S. Parole Comm'n, 115 F.3d 809, 810 n.1 (10th Cir. 1997).

Responding officers quickly separated the inmates, restrained them, and recovered the weapon, an ice pick. Mr. Howard was placed in administrative detention in the Special Housing Unit ("SHU") pending an investigation of the incident. An incident report, Incident No. 945214, was filed by Officer Hash on December 10 charging Mr. Howard with violating Bureau Codes 101A (Attempted Assault) and 104 (Possession of a Weapon).

While Mr. Howard was in administrative detention, Officer Ford conducted a routine inventory shakedown of Howard's belongings on December 11, 2001. Officer Ford discovered a hypodermic needle and syringe secreted among Mr. Howard's legal papers. He filed an incident report, Incident No. 945874, charging Mr. Howard with violating Bureau Code 113 (Possession of Drug Related Paraphernalia).

Mr. Howard appeared before the Unit Disciplinary Committee ("UDC") on both charges at separate hearings on December 18 and 26, 2001. At the hearing on Incident No. 945214, Mr. Howard denied the assault and weapon possession charges and asked that prison officials review videotape records from a camera that he alleged captured the incident. At the hearing on Incident No. 945874, Mr. Howard denied possessing the syringe and argued that, while he was detained in SHU, other inmates had had access to his belongings. In both cases, the UDC referred the charges to a disciplinary hearing officer ("DHO") for further hearing. Mr. Howard was provided with written notice of this DHO hearing and responded,

requesting the attendance of three staff witnesses: Officer Sams; Lieutenant Cunningham, the staff supervisor on duty on December 9; and P.A. Santos, who treated Mr. Howard and "Inmate X" for injuries received during the fight.

At a consolidated hearing on the two incidents on February 15, 2002, Mr. Howard denied all violations and repeated his previously asserted defenses to the charges.[2] Mr. Howard's requested witnesses did not appear, but they each submitted a written statement which was considered by the DHO. The DHO refused to consider the videotape evidence that Mr. Howard alleged would exonerate him. Relying on statements by Officers Hash and Ford, other reporting staff members' statements, other supporting documentation, and Mr. Howard's denial, the DHO found Mr. Howard had violated Bureau Codes 224 (Assaulting Another Person), 104 (Possession of a Weapon), and 113 (Possession of Drug Related Paraphernalia). As a result of the charges from each incident, the DHO disallowed previously accumulated good-time credit, recommended disciplinary segregation and a disciplinary transfer, suspended various privileges, and impounded Mr. Howard's personal property. Mr. Howard was subsequently

---

[2]There are two versions of the DHO Report for Incident No. 945214 in the record. The first is dated May 9, 2002, and reflects that Howard did not request any witnesses and admitted his guilt of the weapon possession and assault charges. (Rec. Doc. 8 att. D. at 3.) The second, marked as "Amended," is dated October 4, 2002, and reflects that Howard requested witnesses who were unavailable and denied the charges. (Rec. Doc. 1 ex. D at 1.) No one explains the emendation of the DHO report or why both reports were written so long after the conclusion of the DHO hearing. However, we rely on the Amended DHO Report.

transfered to the United States Penitentiary at Leavenworth, Kansas ("USP - Leavenworth").

Mr. Howard unsuccessfully pursued and exhausted the administrative appeals open to him for both incidents. He then filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the District of Kansas. Following submissions by both parties, the district court dismissed the petition, and Mr. Howard filed this timely appeal.

## II.  Jurisdiction

Mr. Howard argues on appeal that the District of Kansas lacked jurisdiction over his petition because the underlying events took place at USP - Florence. Although Mr. Howard did not raise this argument below, we must address it briefly as a predicate to our exercise of jurisdiction. In this instance, the district court's jurisdiction over this petition is plain. "A petition under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its validity and must be filed in the district where the prisoner is confined." Haugh v. Booker, 210 F.3d 1147, 1149 (10th Cir. 2000) (quoting Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996)). Because Mr. Howard was imprisoned in USP - Leavenworth when he filed his petition, the District Court for the District of Kansas properly exercised jurisdiction over his petition. Further, we have jurisdiction over the appeal pursuant to 28 U.S.C. §§ 1291 and 2253.

## III.  Due Process Claims

Mr. Howard advances three claims before this court. First, he argues that the evidence was insufficient to support the discipline meted out for possession of drug paraphernalia. Second, he contends he was denied due process when the DHO refused to permit Mr. Howard's requested witnesses to testify in person. And finally, he claims the DHO's refusal to produce and review a videotape of the alleged assault constitutes a separate violation of his due process rights. The district court dismissed each of these claims, and we review its conclusions of law de novo. Wilson v. Jones, 430 F.3d 1113, 1117 (10th Cir. 2005).

"It is well settled 'that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment.'" Mitchell v. Maynard, 80 F.3d 1433, 1444 (10th Cir. 1996) (quoting Taylor v. Wallace, 931 F.2d 698, 700 (10th Cir. 1991)). However, "[p]rison disciplinary disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

> Where a prison disciplinary hearing may result in the loss of good time credits, . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454 (1985). Further, "revocation of good time does not comport with the minimum requirements of

procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." Id. (citation, quotation omitted).

## A. Evidence of Possession of Drug Paraphernalia (Incident No. 945874)

"Ascertaining whether [the "some evidence"] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56. A disciplinary board's decision can be upheld by a reviewing court "even if the evidence supporting the decision is 'meager.'" Mitchell, 80 F.3d at 1445 (quoting Hill, 472 U.S. at 457).

Mr. Howard's conclusory arguments to the contrary, the evidence supporting his disciplinary sentence for possession of drug paraphernalia easily meets the Hill standard. It is indisputable that Mr. Howard, who had been placed in administrative detention at the time of Officer Ford's inventory shakedown of his possessions, did not have actual possession of the hypodermic syringe Officer Ford discovered. However, Officer Ford's incident report indicates the contraband was found among Mr. Howard's legal papers confiscated during the time of his detention, and this is "some evidence" sufficient to support the disciplinary sentence on a theory of constructive possession. Cf. Hamilton v. O'Leary, 976 F.2d 341, 345 (7th Cir. 1992) ("The proposition that constructive possession provides 'some evidence' of guilt when contraband is found where

only a few inmates have access is unproblematical.")  Mr. Howard's loss of good-time credits for this infraction thus did not violate his due process rights.

**B.  Exclusion of Live Witness Testimony (Incident No. 945214)**

"Chief among the due process minima outlined in Wolff was the right of an inmate to call and present witnesses and documentary evidence in his defense . . . ."  Ponte v. Real, 471 U.S. 491, 495 (1985).  But this right is not absolute; rather it is "circumscribed by the necessary 'mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.'"  Baxter v. Palmigiano, 425 U.S. 308, 321 (1976) (quoting Wolff, 418 U.S. at 556).  Because of the "greater hazards to institutional interests" posed by confrontation and cross-examination, "there is no general right to confront and cross-examine adverse witnesses" in the context of prison disciplinary proceedings.  Id. at 321, 322 n.5 (citation omitted).  And while prison officials must consider an inmate's request "to call or confront a particular witness . . . on an individualized basis," Ramer v. Kerby, 936 F.2d 1102, 1105 (10th Cir. 1991), "errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review," Grossman v. Bruce, 447 F.3d 801, 805 (10th Cir. 2006).

Mr. Howard requested the testimony of three witnesses at his hearing before the DHO: Officer Sams, Lieutenant Cunningham, and P.A. Santos.  While none of the three testified in person, each submitted written statements.  Mr.

Howard contends that the testimony of Officer Sams, who witnessed part of the incident, was necessary to his defense. In his write-up of the incident, Sams stated that he "saw what appeared to be a homemade weapon throne [sic] by an unknown person towards [Inmate X]. [Inmate X] then picked up the homemade weapon[.] Using the weapon [Inmate X] started after inmate Howard . . . striking him in the upper torso and head area."

This testimony is entirely consistent with that provided by Officer Hash, who wrote the incident report on which the DHO's findings relied. Officer Hash reported seeing Mr. Howard "chasing [Inmate X] . . . with [a] homemade weapon. Inmate Howard attempted to assault [Inmate X] by throwing the weapon at [Inmate X and] missing him." In a separate memo, Officer Hash had previously stated that, after Mr. Howard threw the weapon, "[Inmate X] then picked up the weapon and started after inmate Howard."

The abbreviated description provided in Officer Sams's written statement does not conflict with the events as reported by Officer Hash. Although Mr. Howard argues that Officer Sams's statement was ambiguous, he has not demonstrated how further testimony would have aided his defense. As such, Mr. Howard was not prejudiced, and any error in excluding Officer Sams from testifying in person was harmless. See Grossman, 447 F.3d at 805.

**C.  Exclusion of Videotape Evidence (Incident No. 945214)**

In Wolff, the Supreme Court drew no distinction between the standard prison officials may use to refuse requests by an inmate to introduce documentary evidence and that applying to requests to present witness testimony: "the inmate . . . should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566. And, as with a prisoner's request to call a particular witness, prison officials are required to consider a request for documentary evidence on an individualized basis. See Grossman, 447 F.3d at 805.

In addition to his requested witness testimony, Mr. Howard requested that the DHO review videotape records from a camera which was allegedly sited atop a neighboring building.[3] This plea merely reiterated a request Mr. Howard had consistently made before, one he clearly expected would bolster his argument that he acted in self-defense. The Bureau has never asserted, and the record before us does not support, a conclusion that producing the videotape alleged by Mr. Howard to have recorded the incident would be "unduly hazardous to institutional

---

[3]Although the record does not provide conclusive proof that Howard requested production of the tape at the DHO hearing, it provides strong inferential support that he did so. (See Rec. Doc. 1 ex. G (Administrative Remedy Response dated 11/01/02) (noting Howard's contention that he was denied review of the videotape); Rec. Doc. 13 at 2 (finding, in the district court below, that Howard did request the tape at the hearing).)

safety or correctional goals." Wolff, 418 U.S. at 566. The DHO's unjustified refusal to produce and review it deprived Mr. Howard of the process due him.

The Bureau, responding to the district court's show-cause order, raised two arguments. It asserted, first, that Mr. Howard had failed to demonstrate that any videotape documenting the incident existed and, second, that in any event its presentation would be "needlessly cumulative." As to the Bureau's first point, we note both that the Bureau has carefully refrained from denying that any videotape exists and that the proof of this point is solely within its control. We are unconvinced, given Mr. Howard's specific allegations of self-defense and exculpatory videotape evidence in the government's exclusive possession, that Mr. Howard failed to carry whatever burden he may have had at that stage of the proceedings.[4]

We find the second point equally unavailing. The Bureau noted that the DHO based his decision on staff reports, and argued that, because "[p]rison staff

_____

[4]In this connection, we note that at least one other circuit has vigorously enforced a long-standing rule requiring government disclosure of exculpatory evidence in prison disciplinary proceedings, "unless that disclosure would unduly threaten institutional concerns." Rasheed-Bey v. Duckworth, 969 F.2d 357, 361 (7th Cir. 1992); see Chavis v. Rowe, 643 F.2d 1281, 1285-86 (7th Cir. 1981) (holding that officials' failure to disclose materially exculpatory evidence in a prison disciplinary proceeding violates the inmate's due process rights and is not harmless error); see also 60 AM. JUR. 2d Penal & Corr. Insts. § 143 (noting that "depriving a prisoner [of] an opportunity to present exculpatory evidence" violates due process, citing Chavis). We do not, in this case, need to go this far, and so we do not in this case determine whether or not to follow this line of cases.

- 11 -

are legally obligated to tell the truth in disciplinary proceedings," introducing "any *possible* videotape would have been needlessly cumulative." This Orwellian argument would neatly dispose of any need to allow inmates to present evidence contradicting statements of prison staff, a conclusion we are not prepared to accept. See Ramer, 936 F.2d at 1104 ("[A]n assertion that a witness' testimony is 'merely corroborative' generally is insufficient to justify denial of an inmate's request to call witnesses when that inmate faces a credibility problem trying to disprove the charges of a prison guard." (citation omitted)). Moreover, the DHO could not possibly have known the videotape was needlessly cumulative without looking at it. We do not question the truthfulness of the testimony provided by Officers Sams and Hash when we note that neither may have witnessed the entire incident, and the critical facts of Mr. Howard's asserted defense may have been recorded by the videotape before either officer arrived on the scene. On neither ground advanced by the Bureau, then, can we agree that the refusal to produce and review the videotape at Mr. Howard's hearing before the DHO would have been "unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 566.

The Bureau does not argue, nor are we prepared to say on the record before us, that the DHO's refusal to review the videotape was harmless.[5] It is plain that,

---

[5]In its response brief, the Government has advanced the theory that, construing Howard's argument as one arising under Brady v. Maryland, any due

(continued...)

if Mr. Howard is correct, the videotape would not have been "needlessly cumulative" but would rather have constituted significant, perhaps conclusive, evidence that might exonerate him of the acts charged against him.  Rather, liberally construing Mr. Howard's allegations as we must for *pro se* plaintiffs, Garcia v. Lemaster, 439 F.3d 1215, 1217 (10th Cir. 2006), Mr. Howard has successfully alleged that the DHO's refusal to produce and review the videotape prejudiced him based on his allegations that the tape would show he acted in self-defense.

---

[5](...continued) process violation stemming from its refusal to turn over the videotape was harmless.  Its argument in this regard depends on the contention that Howard's admitted conduct "would fit within the prison discipline definitions for possessing a sharpened instrument and/or assault."  See Griffin v. Brooks, 13 Fed. App'x 861, 864 (10th Cir. 2001) (unpublished) (holding refusal to turn over an allegedly exculpatory videotape was not prejudicial when the theory of exculpation was legally incorrect).  The Government, however, misconstrues the nature of Howard's admissions and fails to substantiate its contention that his admitted conduct falls within the ambit of the regulatory language.

Although the Government states that Howard "admitted during the DHO proceedings that he had actually picked up and thrown a sharpened object in the direction of another inmate," this contention is not supported by the record.  During the incident investigation, Howard stated that "[t]his fool came up on me with a knife[;] when the fool dropped the knife, I picked it up and threw it at the wall, not even in his direction."  (Rec. Doc. 8 att. D at 2 (Incident Report No. 945214).)  The summary of Howard's statement at the DHO hearing is far less illuminating: "I was defending myself.  I'm not mad with this inmate."  (Rec. Doc. 1 ex. D at 1 (Amended DHO Report).)

Absent a demonstration that the admitted conduct shown by the record falls within the legal definitions of possession and assault employed by Bureau Codes 104 and 224 and that on this record Howard has no affirmative defenses available to these charges, we cannot label this constitutional violation harmless on logic similar to that employed in Griffin.  Instead, we remand to the district court for a determination of harmlessness on a fuller factual record.

## IV. Conclusion

Mr. Howard's arguments that his due process rights under <u>Wolff v. McDonnell</u> were violated by insufficient evidence to sustain the possession of drug paraphernalia charge in Incident No. 945874 and by the exclusion of witness testimony at his disciplinary hearing concerning Incident No. 945214 are without merit. However, the Bureau's refusal to produce and review a videotape which Mr. Howard asserts would refute charges stemming from Incident No. 945214 violated his due process right to present documentary evidence in his own defense. Accordingly, we AFFIRM the district court's dismissal of Mr. Howard's petition for a writ of habeas corpus as to Incident No. 945874 and VACATE its dismissal of the petition as to Incident No. 945214 and REMAND for consideration whether the violation of Mr. Howard's procedural due process rights was nonetheless harmless error.