**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 2, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

TIMOTHY SHAWN BOGUE, JR.,

Petitioner-Appellant,

v.

MARVIN VAUGHN, Warden,

Respondent-Appellee.

No. 10-7080
(D.C. No. 6:08-CV-00442-JHP-KEW)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **EBEL** and **O'BRIEN**, Circuit Judges.

---

We confront an issue regarding the extent to which a prisoner's request for

the prison to produce relevant and available videotape recordings to use at his

disciplinary hearing may be satisfied by a prison official's review and report of

the content of the recordings. In this case the prisoner's right to inspect and

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

introduce relevant first hand evidence must give way to the prison's security concerns and procedures.

In 2005 a fight between African-American and white inmates broke out among a large group of prisoners incarcerated at the Cimarron Correctional Facility (CCF) in Cushing, Oklahoma, a prison privately owned and operated by Corrections Corporation of America (CCA) and housing Oklahoma Department of Corrections inmates. As a result of the melee, one prisoner was killed and several others were injured. Petitioner Timothy Shawn Bogue, Jr., who was among the injured, was charged with misconduct for his part in the disturbance. At a disciplinary hearing Bogue was found guilty of Group Disruptive Behavior. His punishment included the revocation of 365 days earned credit, assignment to thirty days in disciplinary segregation, and a reduction in earned-credit level. Bogue pursued and exhausted available administrative remedies. Thereafter, he sought relief from Oklahoma state courts without success.

Bogue then turned to the federal courts. Among other things, his 28 U.S.C. § 2241 habeas petition asserts that Warden Vaughn and other CCF officials violated his right to due process by failing to allow him to review the videotape recordings of the incident and, if necessary, submit them into evidence at his disciplinary hearing. The district court denied the petition and dismissed the case. In holding "some evidence" in the record supported the conclusion resulting from the disciplinary hearing, *see Superintendent, Mass. Corr. Inst.,*

*Walpole v. Hill*, 472 U.S. 445, 454 (1985), the district court noted "[t]he videotape of the incident was in the custody of the [Oklahoma State Bureau of Investigation], but it was viewed by the investigator who reported in his Review of Evidence that he identified petitioner as a participant in the group disturbance by viewing the videotape made with a hand held camera." R. at 166. Bogue timely sought a Certificate of Appealability (COA) on several grounds.

We granted a COA[1] on one issue: "Whether [Bogue] was denied due process because he was not allowed to present as evidence the videotape of the prison disturbance and was not allowed to view the videotape himself[,]" *see Bogue v. Vaughn*, No. 10-7080, Order (10th Cir. May 24, 2011) (per Hartz, J.,) (unpublished). We now affirm.[2]

## I. DISCUSSION

Because we are reviewing the denial of a § 2241 petition,[3] "the deference

---

[1]    In order to appeal the denial of habeas relief in his § 2241 proceeding, Bogue must obtain a certificate of appealability (COA) from this court. *Dulworth v. Jones*, 496 F.3d 1133, 1135 (10th Cir. 2007). To warrant such certification, Bogue must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). All but one of Bogue's claims fail to clear the COA hurdle.

[2]    Our jurisdiction derives from 28 U.S.C. §§ 1291 and 2253(a).

[3]    Bogue properly framed his habeas petition as pursuant to 28 U.S.C. § 2241
(continued...)

normally accorded state court judgments under § 2254 does not apply. Instead,

we review habeas claims made pursuant to § 2241,[4] including [Bogue's],

de novo." *Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007). While we

construe Bogue's pro se pleadings liberally, *Haines v. Kerner*, 404 U.S. 519,

520-21 (1972), "we must refrain from usurping the role of prison administrators

while protecting the constitutional rights of the inmates," *Mitchell v. Maynard*,

80 F.3d 1433, 1443 (10th Cir. 1996).

A. Due Process

Because Oklahoma inmates possess a liberty interest in earned credits,

*Wallace v. Cody*, 951 F.2d 1170, 1172 n.1 (10th Cir. 1991), *superseded by statute*

---

[3](...continued)
because he is challenging the execution of his sentence – the revocation of 365 days earned credit. Had he challenged the validity of his conviction or sentence, he would have needed to proceed under 28 U.S.C. § 2254. *See Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000).

[4]      In several instances, the language of § 2254 clearly indicates that its provisions are only operable as to a petition for habeas relief filed by "a person in custody pursuant to the judgment of a State court." *See* 28 U.S.C. § 2254(a), (b), (d), (e). [O]ur prior cases have established that the somewhat ambiguous term "judgment of a State Court" within § 2254 refers only to conviction and sentence, *see Dulworth v. Evans*, 442 F.3d 1265, 1268 (10th Cir.2006); *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811 (10th Cir.1997). The deferential standard of review contained within § 2254 is, therefore, only properly invoked when an individual in state custody collaterally attacks the validity of a state conviction and/or sentence.

*Walck v. Edmondson*, 472 F.3d 1227, 1234 (10th Cir. 2007) (citations omitted). This case is not an attack on Bogue's state conviction or sentence.

*on other grounds as recognized in Magar v. Parker*, 490 F.3d 816 (10th Cir. 2007), they are entitled to due process protection before being deprived of those credits. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). When a prison disciplinary hearing may result in the loss of earned credits, a prisoner must be accorded "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and *present documentary evidence in his defense*; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Hill*, 472 U.S. at 454 (emphasis added); *Wolff*, 418 U.S. at 563-67. "[R]evocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." *Hill*, 472 U.S. at 454 (citation and quotation omitted).

That being said, however, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556.

> [C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action. Viewed in this light it is immediately apparent that one cannot automatically apply procedural rules designed for free citizens in an open society, or for parolees or probationers under only limited restraints, to the very different situation presented by a disciplinary proceeding in a state prison.

*Id.* at 560 (citations and internal quotation marks omitted).

Although the right of a prisoner to call witnesses and present documentary evidence is at the heart of the *Wolff* requirements, the right is "necessarily circumscribed by the penological need to provide swift discipline in individual cases." *Ponte v. Real*, 471 U.S. 491, 495 (1985). The right to call witnesses is further subject to the "mutual accommodation between institutional needs and objectives and the provisions of the Constitution." *Id.* (internal quotation marks omitted). "[A]s with a prisoner's request to call a particular witness, prison officials are required to consider a request for documentary evidence on an individualized basis." *Howard v. United States Bureau of Prisons*, 487 F.3d 808, 813 (10th Cir. 2007). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority[.]" *Wolff*, 418 U.S. at 566. A decision to disallow the presentation of a witness or other evidence will pass due-process muster so long as the reasons for doing so are "logically related to preventing undue hazards to institutional safety or correctional goals." *Ponte*, 471 U.S. at 497 (internal quotation marks omitted). Indeed, the Supreme Court has noted:

> Given these significant limitations on an inmate's right to call witnesses, and given our further observation in *Wolff* that "[w]e

should not be too ready to exercise oversight and put aside the judgment of prison administrators," it may be that a constitutional challenge to a disciplinary hearing . . . will rarely, if ever, be successful.

*Id.* at 499 (quotation omitted).

Against this backdrop, we examine the particulars of Bogue's due-process claim. Overall Bogue insists he was an innocent bystander, was not involved in the violence and was injured because he could not get away. He claims the videotapes will substantiate his position.[5] He clearly asked for the videotapes well before his disciplinary hearing. R. at 33.

In lieu of producing actual evidence, CCF regulations allow investigating officers to complete a detailed description of evidence, known as a "Review of Evidence," which is then attached to the Offense Report. That was done in this case. In response to Bogue's request for the videotapes, a CCF official prepared a Witness Discretionary Action Record in which he stated "there is no video tape to use as evidence. The video tape isn't in CCA possession but in OSBI [Oklahoma State Bureau of Investigation] custody."[6] R. at 104. The officer thus declared the

---

[5] There were two sources of videotape. One was a fixed camera mounted outside the perimeter fence which showed the recreation yard and the weight pile. According to CCF officials, "[t]his portion of the tape recording shows a mass of prisoners engaged in fighting, and there is no indication that any inmate is not involved at some point in the melee." R. at 120 (Group Disturbance Incident Summary). The second camera was hand held and recorded "inmates entering the gym from the weight area at the conclusion of the incident." *Id.*

[6] Although there is no evidence in the record to support it, respondent's brief

(continued...)

tapes unavailable for the disciplinary hearing. *Id.* at 52.

As an accommodation for the fact that it could not access the actual videotapes, respondent dispatched a staff member to the OSBI office to view the tapes "for the sole purpose of identifying participants in the incident." *Id.* at 120. According to the officer, review of tape from the fixed camera showed "a mass of prisoners engaged in fighting, [with] no indication that any inmate [was] not involved at some point in the melee." *Id.* The officer who reviewed the tape from the hand-held camera also personally witnessed the fight and identified Bogue "as a participant in the group disturbance as he was identified on the weight pile immediately after the disturbance." *Id.* at 34, 119. Bogue was given a copy of the Review of Evidence describing the contents of the videotapes and the Offense Report and was allowed to read both documents into the record at the hearing. *Id.* at 72-73.

Vaughn now argues "[m]aking a written record of observations is a reasonable accommodation, based on the security requirements of the OSBI to preserve the evidence in a criminal case involving the murder of an inmate coupled with the need to provide[] due process appropriate to the situation." Answer Br. at 8. We agree. Under these circumstances, Bogue was not deprived of due process.

---

[6](...continued)
maintains the OSBI would not release the videotapes to a private prison. Answer Br. at 7.

A prisoner's right to access documentary evidence in a disciplinary setting is circumscribed by the need to determine "the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Wolff*, 418 U.S. at 560. The right can be exercised as long as doing so "will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566.

Here the initial government function involved the State's need to investigate a deadly altercation at one of its prisons involving warring groups. The videotape evidence was likely critical to the State's legitimate need to punish the participants in the disturbance, thereby deterring such violent conduct in the future. Failure to bring the participants to justice could easily be "hazardous to institutional safety and correctional goals" at some future date. But that overarching goal is not particularly relevant to the immediate issue.

Here, Bogue's interest in obtaining the videotapes (to demonstrate he did not participate in the melee and therefore should not lose his earned credits) must be balanced against the state's need to efficiently and effectively deal with prisoner discipline (rather than its original investigative purpose). As a general matter, institutional concerns may dictate reliance on a summary of videotape evidence in lieu of providing a prisoner with access to the tape itself. *Wolff* requires prisoners be allowed to present documentary evidence but only when permitting them to do so "will not be unduly hazardous to institutional safety or

correctional goals." *Id.* at 566. If introducing the actual tape into evidence or permitting an inmate to view all of the tape of an entire incident poses the risk of reprisals against other inmates, danger to guards, or additional prison conflict, prison authorities are well within their discretion to devise ways to avoid those risks.

> The reality is that disciplinary hearings and the imposition of disagreeable sanctions necessarily involve confrontations between inmates and authority and between inmates who are being disciplined and those who would charge or furnish evidence against them. Retaliation is much more than a theoretical possibility; and the basic and unavoidable task of providing reasonable personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonism on the important aims of the correctional process.

*Id.* at 562.

"There is much play in the joints of the Due Process Clause." *Wolff*, 418 U.S. at 567. On these facts the procedure employed was within Vaughn's discretion, *Wolff*, 418 U.S. at 566-67, and was a reasonable accommodation of Bogue's needs; it appropriately balanced them against "institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.* at 556. This case is not significantly different from other prison disciplinary proceedings where the prison relies on oral or written reports from correctional officers detailing the results of their investigations – often purely hearsay evidence. *See, e.g., Taylor v. Wallace*, 931 F.2d 698, 701 (10th Cir. 1991). Since Vaughn no longer possessed the videotapes and, apparently, could not readily

-10-

obtain them[7] he was within his discretion to dispatch an officer to review the tapes and report as to their contents. In addition, permitting Bogue to view the recordings might well have compromised prison security by revealing its means and methods of surveillance and response to riots or near riots. Moreover, some of the information on the tapes about guards and other inmates might well have been subject to misuse by Bogue and otherwise present collateral problems impacting prison security and administration.

The administrative review concluded "the degree of [Bogue's] attempted involvement in the event may be questioned, nonetheless it still occurred." R. at 72. The process leading to that conclusion was hardly robust, but under the circumstances it was all that was due.

B.      Issues not Warranting a COA

In his application for a COA, Bogue also argues there was insufficient evidence to support the prison disciplinary decision. As mentioned, however, due process requires only that the decision of the hearing officer be supported by "some evidence." *Hill*, 472 U.S. at 455. "A disciplinary . . . decision can be

---

[7]      "Because the only federal right at issue is procedural, the relevant inquiry is what process [Bogue] received, not whether the [Disciplinary Hearing Officer and] the state court[s] decided the case correctly." *Swarthout v. Cooke*, 131 S. Ct. 859, 863, *rehearing denied*, 131 S. Ct. 1845 (2011). We also note this matter does not involve lost or destroyed evidence as was the case in *Arizona v. Youngblood*, 488 U.S. 51 (1988), but rather presents an issue of how far prison officials must go to produce existing evidence no longer in their possession or control.

unheld by a reviewing court even if the evidence supporting the decision is meager." *Howard*, 487 F.3d at 812. As discussed, there was enough evidence of Bogue's guilt to satisfy the some-evidence standard.

Bogue cites *Zavaro v. Coughlin*, 970 F.2d 1148 (2d Cir. 1992), to support his due-process claim. *Zavaro* held the some-evidence standard was not met in a disciplinary proceeding against an inmate who was one of 100 present at the site of a riot. *Id.* at 1152-53. The sole evidence against the inmate was statements by guards that every inmate had participated in the riot. *Id.* The court ruled the statements inadequate because "such all-inclusive statements about the conduct of one hundred or so inmates in a mess hall—especially coming from guards who were at the time being assaulted—are so blatantly implausible when taken literally that they do not constitute even 'some evidence' of a particular inmate's guilt." *Id.* at 1152. Of course the Second Circuit's decision is not binding; but equally important, the cases are quite different. Unlike in *Zavaro*, where the allegation that all inmates were involved in the melee came from a guard who was being assaulted, the allegations here resulted from a more circumspect and dispassionate review of video evidence (by an officer who had been present). In addition, the officer's review established that Bogue, in particular (not merely as one of all inmates), participated to some degree in the melee.

Bogue also argues he was denied due process because the Oklahoma Department of Corrections did not abide by its own time limits. But a violation of

-12-

state law is not a violation of constitutional due process. *See Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir. 2003) ("in deciding whether a state has violated a person's constitutional right to procedural due process, we should pay no attention to whether the state has complied with procedures mandated by state law").

In his reply brief, Bogue contends the notice of charge he received was constitutionally deficient. Ordinarily, this court does not address issues raised for the first time in a reply brief. *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000). Even if we were to consider the issue, however, we would not grant a COA. The record contains a copy of the Offense Report given Bogue after the incident. R. at 32. It indicates the date, time, and place of the Group Disruptive Behavior, describes the incident and notes Bogue's participation in it. An Amended Offense Report was given to Bogue some months later after prison officials had reviewed the tape made by the hand-held camera. *Id.* at 57. The Amended Report similarly informed Bogue of the particulars of the charge against him. These reports were given to Bogue well in advance of his disciplinary hearing giving him adequate opportunity "to marshal the facts in his defense and to clarify what the charges [were], in fact." *See Wolff*, 418 U.S. at 564.

Because none of these issues constitutes "a substantial showing of the denial of a constitutional right," *see* 28 U.S.C. § 2253(c)(2), and because no jurist of reason could disagree with the district court's resolution of these claims, we deny a COA on them and dismiss the portion of the appeal addressing them.

The judgment of the district court as to the videotape-production issue (upon which we granted a COA) is AFFIRMED.[8]

Entered for the Court

Terrence L. O'Brien
Circuit Judge

---

[8] The district court granted permission to appeal without prepayment of fees (IFP), but not before Bogue filed a similar motion in this court. His motion for IFP to this court is therefore denied as moot.