FILED
United States Court of Appeals
Tenth Circuit

October 28, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOEY LOUIE MENDOZA,

      Petitioner - Appellant,

v.

REBECCA TAMEZ, Warden,[*]

      Respondent - Appellee.

No. 11-1223
(D. Colo.)
(D.C. No. 1:09-CV-01412-MSK-KMT)

**ORDER AND JUDGMENT[†]**

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

      Joe Louie Mendoza, a federal prisoner, was docked 40 days good time credit for

violating the Bureau of Prison's (BOP) policy on drug use. In this 28 U.S.C. § 2241

habeas petition, he challenges the fairness of his disciplinary proceeding and requests the

---

[*] J.M. Winer was the warden in custody of Appellant when the initial petition was filed. Since then, custody has transferred to Rebecca Tamez. The caption in this proceeding is changed pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure.

[†] Oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). We have decided this case on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

imposed sanction be expunged from his record and his good time credit restored. Finding no constitutional violation, the district court denied the petition. We affirm.

**BACKGROUND**

The disciplinary proceeding at the center of this case stems from a urinalysis done at the request of a correctional officer. Upon providing a urine sample, Mendoza signed a chain-of-custody form certifying the sample belonged to him and was sealed in his presence. He then initialed one of the paper strips used to seal the container. Notwithstanding his written declarations, Mendoza says, post hoc, he was out of view when the correctional officer sealed the container and suspects the sample was mishandled.

The urine tested positive for opiates, both in an initial test at the prison and later in a full analysis conducted by National Toxicology Laboratories. An incident report was issued, followed by a formal notice of hearing advising Mendoza of the violation, as well as his rights to the assistance of a staff representative and to present evidence at the hearing. Mendoza requested a staff representative and identified another prisoner he wanted to testify on his behalf at the hearing.

At the hearing, held several weeks later, the case against Mendoza was formidable: a laboratory report reflected the presence of opiates in the urine sample; the chain-of-custody form Mendoza signed certified the sample belonged to him and was sealed in his presence; and finally a letter from the prison's medical unit excluded Mendoza's prescribed drugs as an explanation for the positive test result. Mendoza's defense was limited to an attempt to discredit the chain of custody.

- 2 -

The disciplinary hearing officer, who sustained the charges, was Mendoza's former case manager. She took no part in the investigation or prosecution of the offense. Mendoza's objection to the handling of the urine sample was considered, but the hearing officer gave greater weight to the chain-of-custody form and the laboratory report. The designated staff representative tried to obtain a statement from Mendoza's witness, but the witness wanted nothing to do with the proceeding and was not compelled to testify. In any event, it is doubtful his testimony would have advanced Mendoza's cause: the only purpose of the witness was to verify an undisputed fact that Mendoza had recently undergone surgery. Any inference the hearing officer might have drawn about the surgery and related drug prescriptions would have been possible without additional testimony, but it would have been inconsistent with the report foreclosing the possibility that prescribed drugs resulted in the positive urinalysis.

## DISCUSSION

Mendoza renews the due process argument he made to the district court. He contends he was deprived of timely notice, documents crucial to his defense, and an opportunity to call a witness. He further claims his right to an impartial fact-finder was violated because the disciplinary hearing officer had previously remarked on the likelihood of the urinalysis coming back positive.

We review habeas petitions brought under 28 U.S.C. § 2241 de novo. *Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007). Federal inmates must be afforded due process before their good time credits can be revoked. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *Howard v. Bureau of Prisons*, 487 F.3d 808, 812 (10th Cir. 2007). A

disciplinary hearing satisfies due process if it affords the prisoner 1) written notice of the violation at least 24 hours before the hearing; 2) an opportunity to call witnesses and present documentary evidence (if consistent with institutional safety and correctional goals) to an impartial decision-maker; and 3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-66, 571. Due process is satisfied if "some evidence" in the record supports the decision. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985).

We have no difficulty concluding the hearing officer's decision finds adequate record support. The "some evidence" standard is not exacting and is easily satisfied by a positive urinalysis test. *Hill*, 472 U.S. at 457. In addition to the test result, the medical report foreclosed the possibility that the positive urinalysis resulted from prescribed drugs. And while, according to Mendoza, the urine sample was sealed out of his presence, his testimony was contrary to the documentary evidence supporting the integrity of the chain of custody and, apparently, unconvincing. He has failed to cast doubt on the validity of the hearing officer's ultimate conclusion.

Mendoza received the process prescribed by *Wolff*. All the pertinent safeguards were in place. He had timely notice of the disciplinary action, an opportunity to call witnesses, and access to a staff representative, who appeared on his behalf at the hearing. He was invited to, and did, submit testimony, and his testimony is recounted in a written report from the hearing officer, which documents the evidence considered and the basis for her findings.

Mendoza contends his defense was hampered when prison officials refused to turn

over the laboratory report and the chain-of-custody form before the hearing. His argument is unavailing; he had an opportunity to review the chain-of-custody form when he provided the urine sample, and the laboratory report was furnished at the hearing. But even assuming he was entitled to see the documents before the hearing, the procedural requirements set forth in *Wolff* are subject to harmless error analysis, *Howard*, 487 F.3d at 814; *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006), and Mendoza does not explain what he intended to do with the forms, much less how his limited access to them prejudiced his defense.

Mendoza also contends he was denied due process because the BOP failed to abide by its own time limits. Specifically, he claims prison officials were required to provide notice of his violation within 24 hours of discovering it. *See* 28 C.F.R. § 541.5(a). This claim, however, does not withstand a plain reading of the regulation. Section 541.5(a) is advisory, providing that written charges "ordinarily" should be given within a day, and the flexible language may very well have been designed to accommodate a situation like this, where the BOP had a strong suspicion of a violation but wanted confirmation from a lab and the inmate's medical records before filing an official charge.

In any event, noncompliance with the regulation would not have amounted to a due process violation. Although Mendoza has a liberty interest in his good time credits, he has no comparable interest in the proper enforcement of prison regulations. Prison regulations are designed to ensure the safe and secure administration of prisons, not to confer rights, and they create liberty interests only when they protect inmates from

- 5 -

"atypical or significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Late notice of a disciplinary charge does not represent such a hardship.

Finally, Mendoza's claim of a biased hearing officer is without merit. Mendoza alleges that after his initial urinalysis came back positive, but before the BOP received the complete laboratory results, his then case manager (who would later serve as the hearing officer in his disciplinary proceeding) remarked that "you know that your [urinalysis] is going to come back positive." (R. at 10.) That remark, Mendoza contends, rendered the hearing officer incapable of reaching an impartial decision.

These allegations do not support a due process violation. Our review of a due process challenge based on impartiality is limited to whether such bias deprived the inmate of a meaningful opportunity to present his defense. *Mitchell v. Maynard*, 80 F.3d 1433, 1446 (10th Cir. 1996). Mendoza does not contend that his case manager's participation in the hearing was enough by itself to demonstrate bias; nor does he allege his case manager took part in the investigation or prosecution of the drug offense. Indeed, nothing in the record points to any prior involvement of the case manager beyond her passing remark about the urinalysis. The district court concluded the remark was likely innocent, less indicative of bias than a reflection of her experience suggesting preliminary drug tests are often confirmed upon more exacting analysis. Mendoza does not challenge this conclusion, and we see no reason to discount it. In any event, Mendoza does not dispute the urinalysis results (his only quarrel was chain of custody, which did not involve the hearing officer), so the hearing officer's suggestion about the

probable results of the testing had no bearing on the outcome of the hearing.

Accordingly, the district court's judgment is **AFFIRMED**. We **DENY** Mendoza's request to proceed in forma pauperis on appeal. He must pay the full amount of the filing fee and the docketing fee to the district court.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge