FILED
United States Court of Appeals
Tenth Circuit

December 10, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

GREGORY D. CROSBY, a/k/a
Gregory D. Cosby,

       Petitioner - Appellant,

v.

JACK FOX, Warden; DHO OFFICER
ANGELO JORDAN,

       Respondents - Appellees.

No. 18-1334
(D.C. No. 1:17-CV-02308-RM-STV)
(D. Colorado)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HARTZ**, and **McHUGH**, Circuit Judges.
_____

Gregory D. Crosby, a federal prisoner appearing pro se,[1] appeals the denial of

his petition for writ of habeas corpus under 28 U.S.C. § 2241. Exercising jurisdiction

under 28 U.S.C. §§ 1291 and 2253, we affirm the decision of the district court.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Federal Rule of Appellate Procedure 32.1 and 10th Circuit Rule 32.1.

[1] Because Mr. Crosby appears pro se "we liberally construe his filings, but we
will not act as his advocate." _James v. Wadas_, 724 F.3d 1312, 1315 (10th Cir. 2013).

# I.    BACKGROUND

Mr. Crosby is currently in the custody of the Federal Bureau of Prisons in Florence, Colorado. Mr. Crosby filed a petition for a writ of habeas corpus, alleging due process violations during two disciplinary hearings. The hearings occurred after an incident involving Mr. Crosby while he was imprisoned at the United States Penitentiary in Lewisburg, Pennsylvania. A correctional officer reported seeing Mr. Crosby and his cellmate engaged in a fight, "striking each other with closed fists punches to the head and upper torso area." ROA at 65.

The officer reported giving the men direct orders to stop fighting, but they ignored the orders. At that point, the officer radioed for assistance. Responding to the call, another officer ordered them to stop fighting, but when they ignored the orders he began administering two-second bursts from his MK-9 OC (chemical munitions) dispenser through the food slot in the door. The officer gave another verbal order for the inmates to stop fighting and submit to hand restraints, but they again refused, and he administered another two-second burst. The officer reported Mr. Crosby ran to the door and attempted to grab his arm while he was administering a third and final chemical burst. However, the officer was able to remove his arm and close the food slot in the door before Mr. Crosby could make contact.

The officers involved filled out incident reports outlining the charges for Mr. Crosby's involvement in the fight with his cellmate as well as his attempted assault on one of the officers. Prison staff delivered the reports to Mr. Crosby the same day. The Unit Discipline Committee referred both charges to a Discipline Hearing Officer

("DHO") for a disciplinary hearing. The DHO advised Mr. Crosby of his rights during a hearing; however, Mr. Crosby refused to sign the form acknowledging the advisement. At that time, Mr. Crosby also indicated he did not wish to have staff representation or call any witnesses. During the hearing, the DHO considered the following pieces of evidence: written statements of the officers and other staff members who observed the incident, video evidence requested by Mr. Crosby that did not show the inside of his cell, Mr. Crosby's written statement and denial that any fight occurred, and the admission of Mr. Crosby's cellmate that they were fighting. The DHO found the greater weight of the evidence supported the charge that Mr. Crosby violated the code by participating in a fight and attempting to assault an officer. As a sanction, Mr. Crosby lost twenty-seven days of his earned good time credits for each violation. Mr. Crosby appealed the DHO's decisions, but the decisions were affirmed.

Mr. Crosby then filed an application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, alleging the prison guards violated his due process rights by not reviewing the video evidence he requested or allowing him to personally review the video evidence, insufficiency of the evidence to find him guilty, and the DHO was biased and prejudiced. The district court denied the application for writ of habeas corpus, finding Mr. Crosby did not demonstrate the DHO violated his due process rights. The district court also concluded there was sufficient evidence to find Mr. Crosby guilty of violating the prison code and the hearing officer was not biased. Mr. Crosby timely filed this appeal after the district court denied his petition for writ of habeas corpus.

3

Mr. Crosby asserts the district court erred in denying habeas relief because he was not afforded due process. He appears to assert three claims in support of this assertion: insufficiency of the evidence, a lack of opportunity to present and personally review video evidence, and a possible *Brady* violation.

## II.     DISCUSSION

We review the district court's denial of a habeas corpus petition de novo. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012). Prison disciplinary hearings are "not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 812 (10th Cir. 2007) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). "It is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause . . . ." *Id.* at 811 (quotation marks omitted). To satisfy the due process requirements in a hearing involving the loss of good time credit, an inmate must receive:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67). "An impartial decisionmaker is a fundamental requirement of due process that is 'fully applicable' in the prison context." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004) (quoting *Wolff*, 418 U.S. at 592 (Marshall, J., concurring in part and dissenting in part)). Additionally, any "revocation of good time does not

4

comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Hill*, 472 U.S. at 454 (quoting *Wolff*, 418 U.S. at 558).

We review the record de novo to ensure the prison staff did not violate Mr. Crosby's due process rights as he alleges. Liberally construing Mr. Crosby's appellate brief, he makes three challenges to the disciplinary decision: there was not sufficient evidence to sustain the decision, he was not given the opportunity to present documentary evidence, and the government failed to disclose exculpatory video evidence.

## A.    *Sufficiency of the Evidence*

To ensure inmates receive their due process rights, the findings of the disciplinary hearing must be "supported by some evidence in the record." *Hill*, 472 U.S. at 454. The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455. The question we ask is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56. We have previously held a disciplinary decision "can be upheld even if the evidence supporting the decision is 'meager.'" *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996) (quoting *Hill*, 472 U.S. at 457).

The DHO relied upon statements made by the correctional officers, the incident reports, surveillance video and still photographs, a statement made by Mr. Crosby's cellmate that they were fighting, and Mr. Crosby's written and oral statements that there

was never a fight and the guards were all lying. We find the DHO's decision is supported by some evidence in the record and satisfies Mr. Crosby's due process rights.

### B.    *Opportunity to Call Witnesses and Present Evidence*

The record shows the DHO advised Mr. Crosby of his rights during the disciplinary process, including the right to provide evidence and call witnesses on his behalf. Mr. Crosby requested that the DHO review the video evidence but declined to call any witnesses. He also refused to sign the paperwork indicating staff informed him of those rights. At the second hearing, the DHO once more advised Mr. Crosby of his due process rights. Again, Mr. Crosby refused to call witnesses but requested the DHO review the video evidence. Based on the record, we find the staff made Mr. Crosby aware of his rights and gave him the opportunity to call witnesses and present evidence; he presented evidence by requesting the "video surveillance be review[ed]" and chose not to call witnesses. *See* ROA at 49, 51, 122.

Mr. Crosby also alleges a due process violation because the surveillance video was not used in the hearing and he was unable to review it. However, the record indicates the DHO relied on the video evidence in making his decision. There is nothing to support Mr. Crosby's claim that the DHO ignored the surveillance video. In support of his contention that his inability to personally review the video constitutes a due process violation, Mr. Crosby relies on our decision in *Howard*, 487 F.3d 808.

In *Howard*, an inmate in a similar position as Mr. Crosby "requested that the DHO review videotape records" that he "expected would bolster his argument." *Id.* at 813. But the DHO declined to do so. We found the "DHO's unjustified refusal to produce and

6

review [the video] deprived Mr. Howard of the process due him." *Id.* at 814. Mr. Crosby's case is distinguishable from *Howard*. In *Howard*, the DHO refused to review the video the inmate requested, but here, the DHO reviewed the surveillance video in making his decision and found it corroborated the reporting officers' statements. Mr. Crosby's due process rights were not violated as in *Howard* because the DHO reviewed the video as requested.

But Mr. Crosby argues the failure to allow him to *personally* review the video violated his right to due process. Nothing in the *Howard* decision created a due process right of an inmate to *personally* review videotape evidence used in a disciplinary hearing. However, we have previously noted "several courts[, applying *Wolff*,] have held that the denial of access to a videotape or audiotape used by prison officials to establish the commission of an offense may infringe a[n] inmate's right 'to marshal facts in his defense and present witnesses and documentary evidence at the hearing.'" *Cannistraci v. Van Der Veur*, 1997 WL 31549, at *1, 106 F.3d 413 (Table) (10th Cir. 1997) (unpublished) (quoting *Gibbons v. Higgins*, 1995 WL 761743, at *2, 73 F.3d 364 (Table) (7th Cir. 1995) (unpublished)). And we have also determined that when an inmate asks for video evidence before the disciplinary hearing, the inmate's "interest in obtaining the videotapes (to demonstrate . . . [innocence])" under *Wolff* may be limited when "institutional concerns . . . dictate reliance on a summary of videotape evidence in lieu of providing a prisoner with access to the tape itself." *Bogue v. Vaughn*, 439 F. App'x 700, 705 (10th Cir. 2011). No such institutional concerns have been voiced here. But it is also unclear from the record whether Mr. Crosby ever requested to view the video himself

instead of only requesting to have the *DHO* review the video. *Compare* ROA at 87, 120 (listing the video surveillance as requested evidence for the proceedings), *and id.* at 122 ("Furthermore, [inmate] is requesting the video surveillance be review[ed] on this matter."), *with id.* at 124 (Mr. Crosby alleging that the DHO rejected his attempts to "reveal" the video and the DHO instead stated "We will save the video for lawsuit action [*sic*]"), *and id.* at 126 (Mr. Crosby arguing he "specifically request[ed] to view [the] video footage prior to [the] disciplinary hearing").

Even if we agreed Mr. Crosby requested to personally review the video and the DHO's denial of that request constituted a procedural due process violation, it would have been harmless error. *See Howard*, 487 F.3d at 814–15. The DHO based his decision on the video in addition to other evidence. Mr. Crosby's ability to review the tape would not have impacted the DHO's decision.

### C.    *Possible* **Brady** *Violation*

As a related argument, a liberal construction of Mr. Crosby's habeas petition and appellate brief reveals a potential *Brady v. Maryland*, 373 U.S. 83 (1963), claim. Mr. Crosby argues the DHO violated *Brady* by failing to turn over the allegedly exculpatory video. Although at least one other circuit has held that *Brady* is applicable to prison disciplinary hearings, *see Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) ("[T]he rule of [*Brady*], requiring the disclosure of material exculpatory evidence, applies to prison disciplinary proceedings"), this court has yet to do so and "we need not decide that issue today to affirm the district court's denial of habeas corpus relief," *Godlock v.*

*Fatkin*, 84 F. App'x 24, 28–29 (10th Cir. 2003). We proceed assuming, without deciding, that *Brady* applies.

"To establish a *Brady* violation, '[1] the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued.'" *United States v. Durham*, 902 F.3d 1180, 1221 (10th Cir. 2018) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). "The defense needs to establish these elements by a preponderance of the evidence." *Id.* Under the third element, "evidence is material and its nondisclosure prejudicial 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Even assuming Mr. Crosby has established the second element, his claim fails on the first and third elements. "The mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard." *United States v. Fleming*, 19 F.3d 1325, 1331 (10th Cir. 1994). Mr. Crosby's sole argument that the evidence is exculpatory is that "it show[s] no action inside the cell." Appellant's Br. at 11. And his only argument regarding materiality is that the video "was critical to this matter." *Id.* In his administrative appeal, Mr. Crosby argued the video was exculpatory in that "nothing in the video show[s] that [Mr. Crosby attempted to grab the officer's hand] because no camera is direct[ed] toward the cell." ROA at 22. The video evidence is not exculpatory nor material because it does not show the inside of Mr. Crosby's cell and thus could not

9

show that he did not attempt to assault the officer or that he was not fighting with another inmate. The fact that the video does not depict any action inside Mr. Crosby's cell because the camera is at the end of the hallway, pointed down the hall and not into his cell, "is neither exculpatory nor critical evidence—it is simply inconclusive." *Holden v. Addison*, 606 F. App'x 469, 470 (10th Cir. 2015).

Any argument regarding the exculpatory or material nature of the video is further undercut because the DHO watched the video and determined it "completely corroborates" the written statements of the various officers involved in the incident that Mr. Crosby committed the violations. ROA at 63, 95. In particular, the video verified the positioning of the officers outside of Mr. Crosby's cell and confirmed their ability to witness the inmates fighting and the encounter between the reporting officer and Mr. Crosby. It further showed the reporting officer rearing backward as Mr. Crosby attempted to grab his arm. In sum, the DHO found "the video evidence matches every staff member's account of their actions throughout the incident," even though it "does not annotate [Mr. Crosby's] actions inside [his] cell." *Id.* at 95.

Furthermore, Mr. Crosby's allegations do not justify an *in camera* review of the video or an evidentiary hearing on the matter. *See United States v. Williams*, 576 F.3d 1149, 1163 (10th Cir. 2009) (requiring a plausible showing that the evidence is material before *in camera* review is justified); *United States v. Garcia-Martinez*, 730 F. App'x 665, 674 (10th Cir. 2018) ("To justify a court undertaking an *in camera* review for *Brady* material, at the very least, a defendant must make a 'plausible showing' that the government files at issue contain 'material' exculpatory or impeachment information."

10

(quoting *Williams*, 576 F.3d at 1163)). Mr. Crosby has not carried his burden under *Brady*, and the failure of the DHO to produce the video evidence so Mr. Crosby could personally view it therefore, did not violate his right to procedural due process.

\* \* \*

We do not find merit in Mr. Crosby's arguments and reject his claim that the DHO violated his due process rights.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court. Additionally, we **GRANT** Mr. Crosby's Motion to Proceed *in forma pauperis*.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

11