**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 4, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

Q. ILI-YAAS HAAKEEM
FARRAKHAN-MUHAMMAD,

　　　　　Petitioner - Appellant,

v.

JOHN OLIVER, Complex Warden,

　　　　　Respondent - Appellee.

No. 16-1367
(D.C. No. 1:15-CV-01880-PAB)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLMES**, and **MORITZ**, Circuit Judges.

**I**

In 2012, pro se[1] prisoner Q. Ili-Yaas Haakeem Farrakhan-Muhammad was

disciplined for possessing a weapon. He was sanctioned with the loss of forty-

one days' worth of good-conduct credits. After exhausting his administrative

remedies, he filed an application for a writ of habeas corpus pursuant to 28 U.S.C.

---

[*]　　　This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

[1]　　　We construe a pro se litigant's filings liberally, *see Erickson v. Pardus*, 551
U.S. 89, 94 (2007) (per curiam), but we do not serve as his advocate, *see*
*Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009).

§ 2241, seeking expungement of his disciplinary record and restoration of his good-conduct time. The district court denied the application on the merits.

Mr. Farrakhan-Muhammad now appeals from that ruling. Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the district court's denial of Mr. Farrakhan-Muhammad's § 2241 application, and **deny** his application to proceed *in forma pauperis.*

## II

Mr. Farrakhan-Muhammad is a federal inmate in the administrative-maximum security prison in Florence, Colorado.[2] On July 10, 2012, prison staff found a sharpened four-inch metal screw hidden in a sink fixture in his cell; a small metal nail file, which had been snapped off of a set of fingernail clippers, was taped to the screw. Officials searched Mr. Farrakhan-Muhammad's locker and found a set of fingernail clippers that were missing a metal file like the one that had been taped to the screw. Mr. Farrakhan-Muhammad was the sole occupant of the cell at the time of the search.

Mr. Farrakhan-Muhammad was charged with possessing a weapon in violation of prison regulations. Prison officials informed him that he would be

---

[2] Until 2013, Mr. Farrakhan-Muhammad was known as Christopher Mitchell. *See* R. at 141 n.1 (Dist. Ct. Order, dated Aug. 30, 2016); *id.* at 95 (Discipline Hr'g Officer Report, dated July 15, 2013). Mr. Farrakhan-Muhammad has also been known as Q Ili-Yaas Haakeem Farrakhan-Muhammad, C. Eli-Jah Hakeem Muhammad, Elijah Hakeem Muhammad, and Caliph Ili-Yas Az-Hakeem Muhammad. *Id.* at 141.

subject to a disciplinary hearing as a result of the charge. The officials also gave him a form that listed his rights relative to that hearing. Those rights included a right to staff representation and a right to call witnesses. Mr. Farrakhan-Muhammad declined staff representation at the hearing. But he requested that Kenneth Crank, a prison employee who worked at the commissary, be called as a witness. Mr. Farrakhan-Muhammad wrote that Mr. Crank would testify that a nail file is not attached to the nail clippers sold in the commissary.

Disciplinary Hearing Officer ("DHO") Miedich conducted the disciplinary hearing on July 30, 2012. During the hearing, Mr. Farrakhan-Muhammad "confirmed [that] he understood his rights" and that "he did not want a staff representative." R. at 137 (Decl. of [DHO] Miedich, dated Nov. 16, 2015). He also "renew[ed] his request to call Mr. Crank as a witness." *Id.*

Mr. Crank, however, did not appear as a witness at the hearing, but he submitted a written statement to DHO Miedich. In that statement, Mr. Crank asserted that "[t]he nail clippers sold in the Commissar[y] do <u>not</u> have a file attached." *Id.* at 126 (Email, dated July 19, 2012). Mr. Crank also stated that "[i]t is prohibited by policy to sell nail clippers with files in the Commissary" and pointed out that he "ha[d] never sold nail clippers with files in the Commissary." *Id.* Mr. Farrakhan-Muhammad provided no other documentary evidence at the hearing, nor did he call any other witnesses to testify.

3

DHO Miedich eventually found Mr. Farrakhan-Muhammad guilty of possessing a weapon. He was sanctioned with forty-one days' loss of good-conduct time, sixty days' disciplinary segregation, and sixty days' loss of commissary and telephone privileges.

Mr. Farrakhan-Muhammad appealed from this decision. The North Central Regional Director determined that a rehearing was warranted.[3] At the rehearing, Mr. Farrakhan-Muhammad again confirmed that he understood his rights and declined staff representation; then, he presented documentary evidence disputing the 2012 incident report and the subsequent charge.

DHO Miedich again found Mr. Farrakhan-Muhammad guilty of possessing a weapon. In the rehearing report, DHO Miedich noted that, although Mr. Crank "attest[ed] that this particular fingernail clipper might not be sold at the [commissary], that d[id] not negate the fact that [Mr. Farrakhan-Muhammad]

---

[3]     Specifically, the Regional Director noted that there were numerous procedural errors in the July 30, 2012 hearing. For instance, the Director noted that DHO Miedich had "documented the inmate did not request witnesses," despite the fact that Mr. Farrakhan-Muhammad had requested that Mr. Crank testify. R. at 85 (Mem. for D. Berkebile Complex Warden, FCC Florence, dated April 4, 2013). The Regional Director also pointed out that "[t]here is no indication that [Mr. Crank] was asked if he could attend the hearing in-person." *Id.* at 84. And although "DHO [Miedich] stated [that] [Mr. Farrakhan-Muhammad] denied the charge," there was "no statement documented anywhere in the DHO report." *Id.* Finally, the Director observed that "DHO [Miedich] did not explain why the greater weight of the evidence showed" that Mr. Farrakhan-Muhammad had possessed a weapon, and "did not counter the witness statement." *Id.* at 85.

4

ha[d] a fingernail clipper in [his] locker," and that "the piece missing from [the fingernail clipper] was in fact attached to the screw." R. at 95 (DHO Report on Reh'g, dated July 15, 2013). As a result, DHO Miedich reasoned that "the greater weight of the evidence" showed that Mr. Farrakhan-Muhammad "committed the prohibited act." *Id.*

Mr. Farrakhan-Muhammad appealed from this decision to the Regional Director; his appeal was denied. He then appealed to the National Inmate Appeals Administrator; that appeal was also denied.

On August 31, 2015, Mr. Farrakhan-Muhammad filed a § 2241 application in the U.S. District Court for the District of Colorado. In that application, he claimed that (1) he was denied the opportunity to present a defense, (2) DHO Miedich was biased against him, and (3) there was insufficient evidence to support his disciplinary conviction.[4] For relief, he sought expungement of the disciplinary conviction and restoration of lost good-time credits.

The district court rejected all three arguments. First, the court found that Mr. Farrakhan-Muhammad had not shown that he was denied the opportunity to

---

[4] Mr. Farrakhan-Muhammad also claimed that DHO Miedich failed to provide him with a written statement of reasons supporting the conviction, R. at 169–70, and that prison officials failed to follow prison regulations, *id.* at 178. The district court rejected both claims. *Id.* at 176–79. Mr. Farrakhan-Muhammad has not addressed either of those rulings in his appeal, so we need not address them now. *See United States v. Bader*, 678 F.3d 858, 867–70 (10th Cir. 2012) ("An issue or argument insufficiently raised in the opening brief is deemed waived." (quoting *Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007))).

present a defense because he had "not identif[ied] the evidence he was foreclosed from presenting." R. at 172 (Dist. Ct. Order Den. Appl. for a Writ of Habeas Corpus, dated Aug. 30, 2016). The court then noted that, although Mr. Farrakhan-Muhammad alleged that he had been denied the opportunity to call Mr. Crank as a witness, "the record reflects that [Mr. Farrakhan-Muhammad] did not request Mr. Crank as a witness for the rehearing." *Id.* The court also pointed out that Mr. Farrakhan-Muhammad had "plenty of time to prepare a defense" and therefore "was provided adequate process . . . with regard to the opportunity to present his defense." *Id.* at 173.

The court also found that DHO Miedich's disciplinary finding—i.e., that Mr. Farrakhan-Muhammad constructively possessed the sharpened screw—was supported by sufficient evidence; absent some exculpatory evidence, the court explained, that finding was enough to support the disciplinary conviction. And the court concluded that DHO Miedich was not biased against Mr. Farrakhan-Muhammad, explaining that although DHO Miedich had already found Mr. Farrakhan-Muhammad guilty in an earlier hearing, that fact alone did not show a "high risk of unfairness to [Mr. Farrakhan-Muhammad]." *Id.* at 178.

Mr. Farrakhan-Muhammad filed a notice of appeal on September 9, 2016.

## III

On appeal, Mr. Farrakhan-Muhammad argues that (1) his procedural due-process rights were violated when DHO Miedich kept him from calling witnesses

6

or presenting evidence, (2) DHO Miedich was biased against him during the rehearing, and (3) DHO Miedich's decision was not supported by substantial evidence. Like the district court, we reject each argument.

"It is well settled 'that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment.'" *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (quoting *Taylor v. Wallace*, 931 F.2d 698, 700 (10th Cir. 1991)). But "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

All three of Mr. Farrakhan-Muhammad's arguments involve questions of law, so we review the district court's rulings de novo. *See, e.g.*, *United States v. Eccleston*, 521 F.3d 1249, 1253 (10th Cir. 2008) ("[W]e review legal issues de novo, and factual findings for clear error." (citation omitted)).

## A

When a prison disciplinary hearing might lead to the loss of good-time credits, an inmate must receive "an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *see also Ponte v. Real*, 471 U.S. 491, 495 (1985) ("Chief among the

7

due process minima outlined in *Wolff* [is] the right of an inmate to call and present witnesses and documentary evidence in his defense . . . .").

Still, though prison officials must consider an inmate's request "to call or confront a particular witness . . . on an individualized basis," *Ramer v. Kerby*, 936 F.2d 1102, 1105 (10th Cir. 1991), any "errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review," *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006).

Mr. Farrakhan-Muhammad argues that DHO Miedich "unconstitutionally precluded [him] from preparing a defense" and from "call[ing] witnesses [or] provid[ing] documentary/ exculpatory evidence." Aplt.'s Opening Br. at 3 (capitalization altered). But this argument is unavailing.

First, it fails at the threshold because it is devoid of record citations and conclusory and does not even explain what the district court did wrong. We have repeatedly deemed such skeletal, "inadequately presented" arguments to be waived. *Bronson v. Swenson*, 500 F.3d 1099, 1104 (10th Cir. 2007); *see also Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 915 (10th Cir. 2012) (noting that an argument is waived when it was briefed "in a perfunctory manner"); *Grossman*, 447 F.3d at 804 n.1 ("[The appellant] also makes conclusory statements that he was improperly denied the right to present evidence . . . . [H]e [does not] explain what evidence he was unable to introduce, making it impossible to review this claim."). In this regard, without record support, Mr.

8

Farrakhan-Muhammad simply asserts that "[t]here was evidence" in the record that DHO Miedich "precluded [Mr. Farrakhan-Muhammad] . . . from preparing a defense" or from "present[ing] documentary evidence" at his hearing. Aplt.'s Opening Br. at 3. Such bald averments are not enough.[5]

Second, the record actually shows that Mr. Farrakhan-Muhammad *did* present documentary evidence in his rehearing. In his declaration, DHO Miedich stated that Mr. Farrakhan-Muhammad "provided several pages of documentary evidence to [DHO Miedich] disputing the Incident Report." R. at 139. The rehearing report also noted that Mr. Farrakhan-Muhammad "provided several pages of documentary evidence to dispute [DHO Miedich's] report" in the original hearing. *Id.* at 94.

Third, nothing in the record suggests that Mr. Farrakhan-Muhammad was denied the opportunity to call witnesses in the rehearing. In fact, on the May 6, 2013 Notice of Disciplinary Hearing, Mr. Farrakhan-Muhammad indicated that he "d[id] not[] . . . wish to have witnesses" testify on his behalf. *Id.* at 98 (Notice of Disciplinary Hr'g Before the [DHO], dated May 6, 2013). The rehearing report reflected the same thing. *Id.* at 94 ("The inmate confirmed that he did not want a

---

[5] Mr. Farrakhan-Muhammad's § 2241 application—which was before the district court—was similarly conclusory and barren of record support. It does not identify the documentary or exculpatory evidence that he had sought to present at the rehearing. Instead, the application asserts only that "[t]here was exculpatory evidence [indicating] that [Mr. Farrakhan-Muhammad] did not have exclusive or substantial control over the area where the alleged weapon was found in the water pipes." R. at 7 (capitalization altered).

9

staff representative *or witnesses*." (emphasis added)).

Finally, any "errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review." *Grossman*, 447 F.3d at 805. The only witness that Mr. Farrakhan-Muhammad ever mentioned was Mr. Crank, who submitted a witness statement asserting that "[t]he nail clippers sold in the Commissar[y] do <u>not</u> have a file attached" and that he "ha[d] never sold nail clippers with files in the Commissary." R. at 126. And DHO Miedich considered that written statement in both the first hearing and the rehearing. In both hearings, DHO Miedich noted that the statement needed to be weighed against the evidence that Mr. Farrakhan-Muhammad actually possessed the sharpened screw and nail file. Any error in excluding that testimony was therefore harmless. *See Grossman*, 447 F.3d at 805; *see also Davis v. Cline*, 525 F. App'x 658, 660 (10th Cir. 2013) (finding that any error in the exclusion of evidence or witnesses "was harmless").

**B**

Mr. Farrakhan-Muhammad argues that the district court erred in finding that there was insufficient evidence of bias in his disciplinary proceedings. Aplt.'s Opening Br. at 3.

Since "honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." *Tonkovich v.*

10

*Kan. Bd. of Regents*, 159 F.3d 504, 518 (10th Cir. 1998) (quoting *Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir. 1986)). And "mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness' of a later adversary hearing." *Mangels*, 789 F.2d at 838 (quoting *Withrow v. Larkin*, 421 U.S. 35, 55 (1975)). Instead, "[d]ue process is violated only when 'the risk of unfairness is intolerably high' under the circumstances of a particular case." *Id.* (quoting *Withrow*, 421 U.S. at 58).

Mr. Farrakhan-Muhammad never explains why DHO Miedich was biased against him, let alone how that bias led to an "intolerably high" risk of unfairness in his disciplinary rehearing. *Id.* (quoting *Withrow*, 421 U.S. at 58). Instead, he offers only bare, conclusory assertions that DHO Miedich "prejudged the factual disciplinary issues" and thus "should have been disqualified" from the proceedings. Aplt.'s Reply Br. at 6 (capitalization altered). Without more, this argument is "inadequately presented," and therefore waived. *Bronson*, 500 F.3d at 1104; *see also Gray*, 672 F.3d at 915; *Gwinn v. Awmiller*, 354 F.3d 1211, 1220–21 (10th Cir. 2004) ("[C]ourts should be alert not to sustain routine or pro forma claims of disqualification." (quoting *Malek v. Camp*, 822 F.2d 812, 817 (8th Cir. 1987))).

## C

Mr. Farrakhan-Muhammad argues that there was insufficient evidence that the weapon found in his cell belonged to him. Specifically, he argues that "there

11

w[as] no corroborating or direct evidence" showing that he had constructive possession of the weapon. Aplt.'s Opening Br. at 4 (capitalization altered).

To comport with due process, there must be "some evidence in the record" to support a disciplinary conviction. *Hill*, 472 U.S. at 454. In determining whether this standard has been met, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56. A disciplinary board's decision can be upheld by a reviewing court "even if the evidence supporting the decision is 'meager.'" *Mitchell*, 80 F.3d at 1445 (quoting *Hill*, 472 U.S. at 457).

In the rehearing report, DHO Miedich laid out the evidence supporting the conviction. He pointed out that officials had found "a long metal screw with a sharpened fingernail clipper fashioned to it" that could "be used as a weapon." R. at 95. He also noted that Mr. Farrakhan-Muhammad "ha[d] a fingernail clipper in [his] locker" and the "piece missing from [the clipper] was in fact attached to the screw." *Id.* DHO Miedich concluded that this was sufficient to show that Mr. Farrakhan-Muhammad had "actual constructive possession of [the] weapon." *Id.*

This was enough to support the disciplinary decision. In general, a person has constructive possession of an object when (though not actually possessing it) he knowingly has the power and ability to exercise dominion or control over it *and* "intent to exercise that control." *United States v. Little*, 829 F.3d 1177, 1182 (10th Cir. 2016); *accord United States v. Simpson*, 845 F.3d 1039, 1060 (10th Cir.

12

2017). When a person has exclusive access to an area, we usually infer "knowing dominion and control" over the items within that area. *See United States v. Hishaw*, 235 F.3d 565, 571 (10th Cir. 2000) ("In most cases, the defendant's dominion, control, and knowledge may be inferred if he has exclusive possession of the premises on which the object was found."). "The same is true as to . . . intent to exercise command over [the items in that] location." *Little*, 829 F.3d at 1183; *see United States v. Griffin*, 684 F.3d 691, 695 (7th Cir. 2012) ("Exclusive control over the premises allows the jury to infer the knowledge and intent to control objects within those premises . . . ."). Furthermore, where the accused has exclusive access to the premises, this latter inference of intent to exercise dominion and control over the item would seemingly be fortified by the fact that the item had been hidden or secreted on the premises.

Based on the record, there was ample evidence that Mr. Farrakhan-Muhammad had constructive possession of the fingernail clippers. Several officers pointed out that he was "the sole occupant of the cell [at the time of the search] and he [was] responsible for ensuring his cell [wa]s free of contraband." R. at 85. And though Mr. Farrakhan-Muhammad presented evidence that he could not have purchased fingernail clippers from the commissary, he never disputed the fact that a set of fingernail clippers—missing a metal file that was taped to the sharpened screw—was found inside his cell locker. This conclusion is consistent with our resolution of past cases involving prison disciplinary

13

decisions. *See, e.g.*, *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 812 (10th Cir. 2007) (concluding that, where an incident report indicated that prison officers discovered a hypodermic syringe among an inmate's legal papers, there was evidence to support the disciplinary conviction despite the fact that the inmate "did not have actual possession of the" syringe).

Taken together, the record shows that there was "some evidence" to support the disciplinary conviction on a theory of constructive possession. *See Howard*, 487 F.3d at 812. The district court did not err in coming to that conclusion.

**IV**

Finally, we address Mr. Farrakhan-Muhammad's request to proceed *in forma pauperis*. The district court denied Mr. Farrakhan-Muhammad's request for *in forma pauperis* status, finding that an appeal would not be taken in good faith. Mr. Farrakhan-Muhammad now renews his request before this court, but because he has not shown "a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal," *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997) (quoting *DeBardeleben v. Quinlan*, 937 F.2d 502, 505 (10th Cir. 1991)), we deny his application to proceed *in forma pauperis*.

14

**V**

For the foregoing reasons, we affirm the district court's ruling, and deny

Mr. Farrakhan-Muhammad's application to proceed *in forma pauperis.*

Entered for the Court

JEROME A. HOLMES
Circuit Judge